IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE BURNING GLASS INSTITUTE<br>    Plaintiff, | : | CIVIL ACTION |
| | : | |
| | : | |
| v. | : | NO.   2:25-cv-01539 |
| | : | |
| BURNING GLASS INTERNATIONAL,<br>INC. and ECONOMIC MODELING, LLC<br>    Defendants. | : | |
| | : | |

**MEMORANDUM**

**MURPHY, J.**                                                                              **September 4, 2025**

This case involves a company that develops and supplies labor market data and consulting services.  Several years ago, the company divided, and one received a license from the other to use the "Burning Glass" mark and related intellectual property under certain conditions.  But later, the two companies began to dispute how the licensee was using the mark.  So the licensor sued the licensee in the District of Idaho.  Not long after, the licensee filed a declaratory judgment action here, naming not only the licensor as a defendant but also a subsidiary of the licensor.  Now, the subsidiary asks us to dismiss it because the licensee has no real dispute with it, and sued it only to help hold venue here.  And the licensor argues that venue is improper, or, in the alternative, that we should apply the first-filed rule and transfer the case to Idaho.  The defendants here have the better argument.  This case belongs in Idaho, and the subsidiary defendant does not belong in the case at all.

**I.      BACKGROUND**

To help alleviate the confusion in a case where the caption could be read as *Burning Glass v. Burning Glass*, we will refer to the plaintiff as "the Institute" and the similarly named defendant as "Lightcast."  The Institute is a Pennsylvania nonprofit corporation with its principal

place of business in Bala Cynwyd, Pennsylvania.  DI 19 at 1.  Lightcast is a Delaware

corporation with its principal place of business in Moscow, Idaho.  *Id*.  Lightcast formed the

Institute in October 2021 with a $1 million grant for charitable purposes.  *Id.* at 3.  Lightcast uses

the Burning Glass trademark and related word and logo marks in connection with supplying

labor market data and other consulting services to clients.  *Id.*; DI 24-1 at 2.  The other

defendant, EMSI, is a wholly owned subsidiary of Lightcast.  DI 25-1 at 2.  In October 2021, the

Institute and Lightcast entered into a marks license agreement ("Marks License") allowing the

Institute to use the Burning Glass trademarks in connection with its charitable activities.  DI 19

at 3-4.  In the same month, the Institute and EMSI entered into a commercially available

materials use agreement ("Data Agreement") and a grant agreement ("Grant Agreement"), which

govern the Institute's use of a labor market database and a $1 million charitable donation,

respectively.  *Id.* at 4-5.  Both the Data Agreement and Grant Agreement contain forum selection

clauses that require any disputes arising out of those contracts to be litigated in Pennsylvania.  *Id.*

at 3; *see* DI 19-2 at 8 (ECF); DI 19-3 at 3 (ECF).

On March 14, 2025, Lightcast filed a complaint in the United States District Court for the

District of Idaho alleging that the Institute breached the Marks License by failing to comply with

Lightcast's trademark guidelines (the "Guidelines").  Complaint, *Burning Glass Int'l v. Burning*

*Glass Inst.*, 3:25-cv-00142, DI 1 (D. Idaho Mar. 14, 2025).  In that case, Lightcast seeks an order

enjoining the Institute from using the Marks License.  *Id.* at 9.  Lightcast sent the Institute a

notice to terminate its use of the trademarks on March 18, 2025.  DI 19 at 3.[1]

---

[1] On April 18, 2025, Lightcast amended its complaint to add claims for trademark
infringement and unfair competition under the Lanham Act.  Amended Complaint, *Burning
Glass Int'l v. Burning Glass Inst.*, 3:25-cv-00142, DI 6 (D. Idaho Apr. 18, 2025).

On March 24, 2025, the Institute filed this action seeking a declaratory judgment that the Marks License remains in effect and the Institute need not follow the Guidelines to the extent they contain contractually unauthorized limitations or are commercially unreasonable. DI 1 at 8. The Institute amended its complaint in this case to add EMSI as a defendant on the ground that Lightcast's breach of contract claim implicates the Data Agreement and Grant Agreement. DI 19 at 9.

## II.    MOTIONS AT ISSUE

### A.  EMSI's Motion to Dismiss

EMSI filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(2) for lack of personal jurisdiction. DI 25-1. First, EMSI moves for dismissal under Rule 12(b)(1) on the ground that the Institute fails to meet the "case or controversy" requirement to establish Article III standing. *Id.* at 4-6. EMSI argues that (1) the alleged injury is the status of the Institute's rights under the Marks License (to which EMSI is not facially a party), not the Data Agreement and Grant Agreement (to which it is); and (2) there is no relevant nexus between the Institute's cause of action and the Data and Grant Agreements. *Id.* The Institute responds that there is a controversy involving EMSI because resolving a dispute under the Marks License will involve construing provisions of the Data Agreement and Grant Agreement, and EMSI is operationally interconnected with Lightcast. DI 29-1 at 13-14. In reply, EMSI argues that neither the Data Agreement nor Grant Agreement mention or restrict the Marks License, or vice versa. DI 31 at 2-3.

Second, EMSI moves for Rule 12(b)(2) dismissal on the grounds that the claims do not arise out of its minimal contacts with Pennsylvania, and that the forum selection clauses of its separate agreements are not imputed to EMSI for the purpose of the Marks License. DI 25-1 at

6-7.  The Institute responds that EMSI's Pennsylvania activities are intertwined with those of

Lightcast, and there is personal jurisdiction by virtue of the forum selection clauses.  DI 29-1 at

14-15.

        **B.  Lightcast's Motion to Dismiss, or, Alternatively, to Transfer**

        Lightcast filed a motion to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3) and

28 U.S.C. § 1406 or, alternatively, to transfer to the District of Idaho under 28 U.S.C. § 1404(a).

*See* DI 24.  Lightcast first argues that venue is improper under 28 U.S.C. § 1391(b)(2) because

electronic correspondence and telephone calls do not form a "substantial" part of the events

giving rise to this dispute.  DI 24-1 at 9-11.  The Institute responds that venue is proper under

§ 1391(b)(2) because the parties negotiated in Pennsylvania, the contract is governed by

Pennsylvania law, and the alleged breach occurred in Pennsylvania.  DI 29-1 at 8-9.

        Lightcast moves, in the alternative, to transfer the matter to the District of Idaho, arguing

that the first-filed rule and § 1404(a) compel transfer.  DI 24-1 at 11-20.  In response, the

Institute argues that Lightcast engaged in forum shopping by filing, but not timely serving, the

Idaho action first.  DI 29-1 at 20-22.  Lightcast replies that it is the "first-to-file" rule, not the

"first-to-serve" rule.  DI 30 at 5.  Lightcast also argues that it did not engage in forum shopping

because it filed the Idaho complaint in its home state and did not anticipate the Institute's filing

here.  *Id.* at 5-6.

## III.    STANDARD OF REVIEW

        "A motion to dismiss for want of standing is . . . properly brought pursuant to Rule

12(b)(1), because standing is a jurisdictional matter."  *Ballentine v. U.S.*, 486 F.3d 806, 810 (3d

Cir. 2007).  "Pursuant to Rule 12(b)(1), the Court must accept as true all material allegations set

forth in the complaint, and must construe those facts in favor of the nonmoving party."  *Id.*  In

reviewing a facial[2] attack to subject matter jurisdiction, a court "must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). The plaintiff bears the burden of establishing subject matter jurisdiction by clearly alleging facts demonstrating each element of standing. *Ballentine*, 486 F.3d at 810; *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

When deciding a motion to dismiss for improper venue under Rule 12(b)(3), a court must "accept as true all of the allegations in the complaint, unless those allegations are contradicted by the defendants' affidavits." *Bockman v. First Am. Mktg. Corp.*, 459 F. App'x 157, 158 n.1 (3d Cir. 2012); *see Leone v. Cataldo*, 574 F. Supp. 2d 471, 483 (E.D. Pa. 2008). Generally, if the court "examines facts outside the complaint to determine venue, the court . . . must draw all reasonable inferences and resolve all factual conflicts in the plaintiff's favor." *Manning v. Flannery*, No. 09-03190, 2010 WL 55295, at *4 (E.D. Pa. Jan. 6, 2010); *see ProModel Corp. v. Story*, No. 07-3735, 2007 WL 4124502, at *1 (E.D. Pa. Nov. 19, 2007). The movant bears the burden of showing that venue is improper. *Myers v. Am. Dental Ass'n*, 695 F.2d 716, 724 (3d Cir. 1982); *Leone*, 574 F. Supp. 2d at 483.

As for transfer under § 1404(a), the party seeking transfer bears the burden of showing that a "balancing of proper interests weigh in favor of the transfer . . . and unless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (internal quotations omitted). A court considers "all relevant factors to determine whether on balance the litigation

---

[2] "A Rule 12(b)(1) motion may be treated as either a facial or factual challenge to a court's subject matter jurisdiction." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).

would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995) (quoting 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure: Jurisdiction and Related Matters* § 3847 (2d ed. 1986)).

## IV.    ANALYSIS

We first address EMSI's motion to dismiss pursuant to Rule 12(b)(1) for lack of standing. Because the Institute lacks standing to sue EMSI, we do not reach the question of whether personal jurisdiction exists.  We then consider Lightcast's motion to dismiss under Rule 12(b)(3) and § 1406, addressing the initial question of whether venue is proper in this district.  Finally, we consider the transfer question in the context of the first-filed rule and § 1404(a) convenience factors.

### A.  The Institute lacks Article III standing to sue EMSI.

"Under Article III, Section 2 of Constitution, the jurisdiction of the federal courts is limited to 'actual cases or controversies.'" *Ballentine*, 486 F.3d at 814 (quoting U.S. Const. art. III, § 2.)[3]  "One element of this 'bedrock requirement' is that plaintiffs must establish that they have standing to sue." *Id.* (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)).  The plaintiff bears the burden of establishing Article III standing by showing: (1) the plaintiff suffered an injury in fact — an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) that there is a causal connection between the injury and the conduct complained of — the injury must be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court; and (3) that it is likely, as opposed to merely speculative,

6

that the injury will be redressed by a favorable decision. *Id.* (citing *Soc'y Hill Towers Owners'*

*Ass'n v. Rendell*, 210 F.3d 168, 175-76 (3d Cir. 2000)). Furthermore, "[a] declaratory

judgment . . . can issue only when the constitutional standing requirements of a 'case' or

'controversy' are met." *St. Thomas--St. John Hotel & Tourism Ass'n, Inc. v. Gov't of U.S. Virgin*

*Islands*, 218 F.3d 232, 240 (3d Cir. 2000).[4] The Third Circuit has stated that a plaintiff seeking a

declaratory judgment "has Article III standing if 'there is a substantial controversy, between

parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance

of a declaratory judgment.'" *Khodara Env't, Inc. v. Blakey*, 376 F.3d 187, 193-94 (3d Cir. 2004)

(quoting *St. Thomas--St. John Hotel*, 218 F.3d at 240)).

The Institute argues that there is a controversy involving EMSI because resolving the

dispute under the Marks License requires construing provisions of the Data Agreement and Grant

Agreement. *See* DI 29-1 at 13-14. We disagree with the Institute for two reasons.[5] First, against

EMSI, the Institute does not allege an actual injury involving a party with "adverse legal

interests." *St. Thomas--St. John Hotel*, 218 F.3d at 240.[6] All the allegations in the Institute's

---

[4] The Declaratory Judgment Act permits a district court, "*[i]n a case of actual controversy within its jurisdiction*," to "declare the rights and other legal relations of any *interested party* seeking such declaration." 28 U.S.C. § 2201(a) (emphasis added).

[5] We need not address the third standing requirement (whether the injury can be redressed by a favorable decision) because the elements addressed here are dispositive.

[6] In the declaratory judgment context, the Third Circuit has at times framed "adversity of interest" as a requirement for ripeness, rather than standing. *See, e.g.*, *Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 647-48 (3d Cir. 1990) (discussing "adversity of interest" as part of the ripeness analysis); *see Armstrong World Indus., Inc. by Wolfson v. Adams*, 961 F.2d 405, 411 (3d Cir. 1992) (stating that to analyze ripeness in the declaratory judgment context, "[w]e focus instead on the 'adversity of interest' between the parties," among other factors.). Whether "adversity of interest" is more appropriately a requirement of standing or ripeness, it is part of the court's jurisdictional analysis. *See Presbytery of New Jersey of Orthodox Presbyterian Church v. Florio,* 40 F.3d 1454, 1462 (3d Cir. 1994) (noting that standing and ripeness are both

amended complaint revolve around Lightcast's behavior, not EMSI's.  DI 19 at 3-8.  The Institute

seeks declaratory judgment regarding the status of its rights under the Marks License with

Lightcast, not the Data Agreement or Grant Agreement with EMSI.  *Id.* at 9.  Even if the other

two agreements were implicated in our analysis, the Institute fails to establish an actual

controversy "in the absence of some form of overt conduct" by EMSI.  *Step-Saver Data Sys.,*

*Inc. v. Wyse Tech.*, 912 F.2d 643, 648 (3d Cir. 1990) (internal quotations omitted).

Second, because the alleged injury involves only the Marks License, it is traceable only

to Lightcast and not to EMSI.  The Institute's amended complaint does not allege that EMSI

holds any rights under the Marks License, only that EMSI entered two separate contracts with

the Institute.  DI 19 at 4-5.  Again, the events precipitating the alleged injury — the Institute's

trademark usage and Lightcast's termination of those rights — relate to performance and breach

under the Marks License, not the Data Agreement or Grant Agreement.  The only alleged breach

is of the Marks License, to which EMSI is not a party.

The Institute fails to establish an Article III case or controversy with EMSI.  Thus, we

dismiss EMSI pursuant to Rule 12(b)(1) and do not address EMSI's motion to dismiss for lack of

personal jurisdiction.

### B.  Venue is proper for the Lightcast dispute under § 1391(b)(2).

Under 28 U.S.C. § 1406(a), "[t]he district court of a district in which is filed a case laying

venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer

such case to any district or division in which it could have been brought."  Under 28 U.S.C.

§ 1391(b), venue is proper in:

---

"a component of the Constitution's limitation of the judicial power to real cases and
controversies").

(1) a judicial district in which any defendant resides, if all defendants are
     residents of the State in which the district is located;
(2) a judicial district in which a substantial part of the events or omissions
     giving rise to the claim occurred, or a substantial part of property that is
     the subject of the action is situated; or
(3) if there is no district in which an action may otherwise be brought as
     provided in this section, any judicial district in which any defendant is
     subject to the court's personal jurisdiction with respect to such action.

The Institute asserts that venue is proper under § 1391(b)(2).[7]  DI 29-1 at 7.  Section

1391(b)(2) "favors the defendant in a venue dispute by requiring that the events or omissions

supporting a claim be 'substantial.'"  *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291,

294 (3d Cir. 1994).  We agree with other district courts that "[i]n determining whether a

substantial part of the acts giving rise to a contract claim occurred in a district, a court should

consider where the contract was negotiated, executed, and performed and where the breach

occurred."  *Leone*, 574 F. Supp. 2d at 484; *see also Wall v. Corona Capital, LLC*, 221 F. Supp. 3d

652, 657-58 (W.D. Pa. 2016); *Ferratex, Inc. v. U.S. Sewer & Drain, Inc.*, 121 F. Supp. 3d 432,

438 (D.N.J. 2015).  Lightcast argues that venue is improper under § 1391(b)(2) because

electronic correspondence and telephone calls do not form a substantial part of the events

necessary to establish venue in this district.  DI 24-1 at 9-10.  We disagree.

We previously found that the location of electronic contract negotiations is a relevant

consideration in § 1391(b)(2) venue analyses.  *See Geis Realty Grp., Inc. v. AMPC Real Est.*

*LLC*, No. 24-1259, 2024 WL 4979267, at *3 (E.D. Pa. Dec. 2, 2024) (finding venue proper in

this district where contract involving Pennsylvania real estate company and New Jersey property

owner negotiated via email and telephone); *see also Thrivest Legal Funding, LLC v. Gilberg*, No.

---

[7] The parties agree that § 1391(b)(1) is inapplicable because Lightcast does not "reside"
in Pennsylvania for jurisdictional purposes.  DI 29-1 at 7 n.1; DI 24-1 at 7.  As for § 1391(b)(3),
Lightcast argues, and the Institute does not contest, that this "action may otherwise be brought"
in the District of Idaho, where Lightcast maintains its principal place of business.  DI 24-1 at 11.

16-03931, 2017 WL 1208064, at *6-7 (E.D. Pa. Apr. 3, 2017) (finding venue proper in this district where Philadelphia company and New York-based attorney negotiated via telephone, email, text message, and fax). "[W]hen a business relationship is conducted via telephone or email, 'it cannot be said that a substantial part of the events occurred in one location or the other; rather it is more appropriate to say that a substantial part of the events occurred in both locations simultaneously.'" *Geis*, 2024 WL 4979267, at *3 (quoting *N. Am. Commc'ns, Inc. v. Eclipse Acqui Inc.*, No. 3:17-167, 2018 WL 651795, at *5 (W.D. Pa. Jan. 31, 2018)).

We conclude that venue is proper under § 1391(b)(2) here because the Institute substantially negotiated, performed, and allegedly breached the Marks License from its principal place of business in Bala Cynwyd, Pennsylvania. This conclusion mirrors our finding in *Geis*, where the plaintiff performed its obligations under, and electronically negotiated, the agreement from its offices and employees' residences in the Philadelphia area. *Id.* at *4. It also reflects the court's reasoning in *Thrivest*, where the parties negotiated the agreements by telephone, email, text, and fax between New York and Pennsylvania. *Thrivest*, 2017 WL 1208064, at *6-7. Even though the agreements were breached and executed in New York, "the entirety of Thrivest's obligations under the Agreements were performed in the Eastern District of Pennsylvania." *Id.* at *7. In the present case, the Institute negotiated the Marks License via telephone and email across multiple states, including Pennsylvania and Idaho. DI 24-1 at 9. It performed its trademark-related activities in this district and under the laws of this state. *See* DI 19 at 3-4; DI 29-1 at 8. And it allegedly breached the agreement in this district, where the Institute is located and to where Lightcast sent the Termination Notice. DI 19 at 7; DI 29-1 at 8. These events are substantial enough to establish venue in this district pursuant to § 1391(b)(2).

C.  **Transfer of the remaining dispute is appropriate under the first-filed rule and § 1404(a).**

Lightcast argues in the alternative that transfer to the District Court of Idaho is appropriate because (1) a first-filed case is already pending there; and (2) § 1404(a) convenience and interest of justice considerations support transfer.[8]  DI 24-1 at 11-20.

"[M]any courts have concluded that the presence of a related case in the transferee forum is a powerful reason to grant a change of venue." *Blanning v. Tisch*, 378 F. Supp. 1058, 1061 (E.D. Pa. 1974).  This is because the first-filed rule encourages "sound judicial administration and comity among federal courts of equal stature.  It is also designed to relieve a party who first brings a controversy into a court of competent jurisdiction from vexation of multiple litigations covering the same subject matter." *Synthes*, *Inc. v. Knapp*, 978 F. Supp. 2d 450, 455 (E.D. Pa. 2013) (internal citations omitted).   In considering a motion to transfer a later-filed case, district courts often import § 1404(a) into their first-filed analysis to clarify the relationship between the two cases and determine whether transfer is appropriate.[9]  *See Landau v. Viridian Energy PA LLC*, 274 F. Supp. 3d 329, 332-34 (E.D. Pa. 2017).  On one hand, "the existence of an earlier-filed case that is similar, but not identical, should be a relevant, but not controlling factor to

---

[8] In opposition, the Institute raises a standalone argument that transfer is not appropriate because Lightcast's subsidiary, EMSI, agreed to a Pennsylvania forum selection clause in the Data Agreement and Grant Agreement.  DI 29-1 at 16.  However, as the Institute correctly points out, Lightcast is not bound by the forum selection clauses in those two agreements.  Moreover, the question of whether the forum selection clause in the two EMSI-related agreements is imputed to the Marks License for venue purposes is irrelevant because we dismissed EMSI.

[9] In some cases, transfer may be presumed without consideration of § 1404(a) because the two disputes are so "genuinely related, in a technical sense" that transfer poses "an obvious remedy." *Landau*, 274 F. Supp. 3d at 333.  Here, although the parties and subject matter in the cases are inextricably intertwined, we think that § 1404(a) remains a necessary component of our analysis because Pennsylvania law, not Idaho law, is controlling, and convenience factors are in play.

consider as part of § 1404 transfer analysis." *Id.* at 334. But on other hand, the "presence of a related action in the transferee forum is such a powerful reason to grant a transfer that courts do so even where other *Jumara* factors, such as the convenience of the parties and witnesses, would suggest the opposite." *Villari Brandes & Kline, P.C. v. Plainfield Specialty Holdings II, Inc.*, No. 09-2552, 2009 WL 1845236, at *5 (E.D. Pa. June 26, 2009) (collecting cases).

For the following reasons, we find that transfer is appropriate in light of the first-filed rule and § 1404(a).

### 1. *Application of the first-filed rule all but compels transfer.*

The first-filed rule requires that, "absent extraordinary circumstances . . . cases sharing substantially similar subject matter and subject to concurrent federal jurisdiction be decided by the court where the litigation was first filed." *Synthes*, 978 F. Supp. 2d at 455. Though district courts disagree as to the appropriate scope of the first-filed rule, the Third Circuit, in a footnote, has interpreted "substantially similar subject matter" as "truly duplicative of the suit before [the court]." *Grider v. Keystone Health Plan Cent., Inc.*, 500 F.3d 322, 333 n.6 (3d Cir. 2007) (quoting *Smith v. S.E.C.*, 129 F.3d 356, 361 (6th Cir. 1997)); *see Landau*, 274 F. Supp. 3d at 332-34 (discussing the scope debate). Regardless, exceptions to the first-filed rule may apply where: (1) rare or extraordinary circumstances exist; (2) the first-filer engaged in inequitable conduct; (3) the first-filer acted in bad-faith; (4) the first-filer engaged in forum shopping; (5) the later-filed action has developed further than the first-filed action; or (6) the first-filing party instituted suit in one forum in anticipation of the opposing party's imminent suit in a less favorable forum. *Synthes*, 978 F. Supp. 2d at 455 (citing *EEOC v. Univ. of Pennsylvania*, 850 F.2d 969, 976 (3d Cir. 1988), *aff'd on other grounds*, 493 U.S. 182 (1990)). The party opposing the application of

the first-filed rule bears the burden of showing such extraordinary circumstances.  *D & L Distrib., LLC v. Agxplore Int'l, LLC*, 959 F. Supp. 2d 757, 766 (E.D. Pa. 2013).

As other courts in this district have noted, "the critical substantive inquiry of the first-filed rule analysis is subject matter."  *Synthes*, 978 F. Supp. 2d at 457 (granting motion to transfer contract dispute because concurrent action shared similar subject matter and California was "epicenter" of dispute); *see, e.g.*, *D & L*, 959 F. Supp. 2d at 770 (granting motion to transfer trademark infringement action in part because concurrent action in Missouri involved same subject matter).  Here, the Pennsylvania and Idaho actions involve the same parties *and* the same subject matter.  DI 19 at 1, 3-8; Complaint, *Burning Glass Int'l*, 3:25-cv-00142, DI 1 at 1-2, 4-8.  The central issues in both the Idaho case[10] and this one are whether the Institute breached its contract with Lightcast, whether the Institute's trademark rights under the Marks License remain in effect, and in which jurisdiction litigation is most appropriate.

The Institute suggests that the forum-shopping exception applies because Lightcast failed to serve its March 14 pleading until "well after" sending the Termination Notice.  DI 29-1 at 21.  However, absent some other extraordinary circumstances, failure to serve a defendant in the first-filed case does not compel setting aside the first-filed rule.  *See Synthes*, 978 F. Supp. 2d at 455.  It might evidence bad faith or anticipatory behavior, but the Institute fails to meet its burden in

---

[10] In the Idaho case, Lightcast alleges that "[t]he Institute's failure to implement or comply with the Guidelines or the Revised Guidelines as required by the License Agreement constitutes a breach of the License Agreement," and seeks a permanent injunction enjoining the use of the trademarks.  Complaint, *Burning Glass Int'l*, 3:25-cv-00142, DI 1 at 7-9.  The Institute moved to dismiss or, alternatively, to transfer to the Eastern District of Pennsylvania on the grounds that the Institute's alleged conduct occurred in Pennsylvania, not Idaho.  Motion to Dismiss*, Burning Glass Int'l*, 3:25-cv-00142, DI 17-1 at 15-18.  In response, Lightcast argues that the case should remain in Idaho because it was filed there first, and the Ninth Circuit's § 1404(a) *Jones* factors weigh against transfer.  Response, *Burning Glass Int'l*, 3:25-cv-00142, DI 19 at 9-14; *see Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000).

alleging facts or providing any authority that would lead us down that road. The Institute also does not explain why it disfavors the District of Idaho, only that it does. DI 29-1 at 21-22.

Moreover, forum shopping is not a persuasive argument when the proposed forum is the "more logical and practical" location than where plaintiffs filed the later action. *Synthes*, 978 F. Supp. 2d at 457; *see, e.g.*, *Moore Corp. Ltd. v. Wallace Comput. Servs., Inc.*, 898 F. Supp. 1089, 1100 (D. Del. 1995) (rejecting forum shopping argument because facts logically connected first-filed action to forum); *Fischer & Porter Co. v. Moorco Int'l. Inc.*, 869 F. Supp. 323, 325 (E.D. Pa. 1994) (noting that departure from first-filed rule may be warranted when forum shopping is the *sole* reason for choice of situs in first suit). There is no reason to deviate from the first-filed rule in this case, where Lightcast conducted its side of the contract negotiations from, and maintains a corporate presence in, Idaho.

Because a similar suit was filed in Idaho before this one, and because no exceptions apply, we find that the first-filed rule strongly supports, if not compels, transfer.

2. *Section 1404(a) private and public interest factors support transfer.*

"Under 28 U.S.C. § 1404(a), a district court may transfer a civil action to another district where the case might have been brought, or to which the parties have consented, for the convenience of the parties and witnesses and in the interest of justice." *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 57 (3d Cir. 2018). The defendant bears the heavy burden of proving that: (1) the case could have been brought in the proposed transferee forum; (2) the proposed transfer will be more convenient for the parties and witnesses; and (3) the proposed transfer will be in the interest of justice. 28 U.S.C. § 1404(a); *see Jumara*, 55 F.3d at 879.

In reviewing a § 1404(a) motion to transfer, courts typically examine six private and six public interest factors. *See Jumara*, 55 F.3d at 879. The private interest factors include: (1)

14

plaintiff's choice of forum; (2) defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial conditions; (5) convenience of witnesses, only to the extent that they may be unavailable for trial in one of the fora; and (6) the location of books and records, only to the extent that they could not be produced in one of the fora. *Id.*  The public interest factors include: (1) enforceability of the judgment; (2) practical considerations which could make the trial easy, expeditious, or inexpensive; (3) relative administrative difficulties in the two fora resulting from court congestion; (4) local interests in deciding local controversies at home; (5) public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. *Id.* at 879-80.

On balance, we find that both the private and public interest factors favor venue in the District Court of Idaho.

### a.   The private interest factors favor transfer.

#### i.   Plaintiff's choice of forum

There is a strong presumption in favor of the plaintiff's choice of forum, especially when that forum is the plaintiff's home and the location of a substantial part of the events giving rise the dispute. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981); *see also DiMark Mktg., Inc. v. Louisiana Health Serv. & Indem. Co.*, 913 F. Supp. 402, 408 (E.D. Pa. 1996).  However, as other district courts have noted, the plaintiff's choice is generally "entitled to less deference when a related action is pending in a different forum." *QVC, Inc. v. Patiomats.com, LLC*, No. 12-3168, 2012 WL 3155471, at *4 (E.D. Pa. Aug. 3, 2012) (citing *Blanning*, 378 F. Supp. at 1061).  In *Synthes*, the court transferred a breach of contract dispute to California, where a first-filed action was already pending, despite the existence of a permissive forum selection clause preferencing Pennsylvania. *Synthes*, 978 F. Supp. 2d at 459-60.  In *Villari*, the court transferred a

case from this district to Michigan, finding that "the existence of a related action in another district is a sound reason for favoring transfer when venue is proper there, even though the transfer conflicts with the plaintiff's choice of forum." *Villari*, 2009 WL 1845236, at *5. There, a Pennsylvania law firm and Delaware corporations were already engaged in judicial proceedings in Michigan that were "inextricably connected" to the breach of contract claim filed in this district. *Id.* at *1.

In light of the first-filed action pending in Idaho, and in the interest of judicial consistency, we do not give substantial deference to the Institute's choice of forum here. The parties, subject matter, and central issue are the same in both cases. DI 19 at 1, 3-8; Complaint, *Burning Glass Int'l*, 3:25-cv-00142, DI 1 at 1-2, 4-8. There is no forum-selection clause in the Marks License mandating litigation in Pennsylvania, and even if there were, it would not be dispositive on our § 1404 analysis. *See Synthes*, 978 F. Supp. 2d at 459 ("A forum selection clause is just one factor in balancing the convenience of the parties."). Moreover, we would be remiss to waste judicial resources and risk obtaining inconsistent results by requiring the parties to litigate in two different courts. For these reasons, this factor cuts in favor of transfer.

### ii.  Defendant's preference

Lightcast favors the District Court of Idaho where its declaratory judgment action is pending and where it maintains its principal place of business. Thus, this factor weighs in favor of transfer.

### iii.  Where the claim arose

As we explained earlier, a substantial part of the events giving rise to this claim occurred in Pennsylvania and Idaho, where the parties engaged in electronic negotiations. But here we must also consider the place of performance and alleged breach. The Institute contends that both

16

occurred in Pennsylvania, where the Institute conducts its trademark-related activities and where

Lightcast couriered the Termination Notice.  DI 29-1 at 8.  Lightcast argues that both took place

in Idaho, because the trademarks are assets of Lightcast, and Lightcast monitors its trademark

rights from there.  DI 24-1 at 10.  Those are reasonable considerations.  But on balance, the

Institute has the better argument that the conduct that gave rise to this claim occurred in

Pennsylvania because it conducts its trademark-related activities under the Marks License in

Pennsylvania and under the laws of this state.  This factor cuts against transfer.

### iv.   Convenience of the parties

We do not find that the relative financial situations of the Institute or Lightcast so

insurmountable as to require litigation in Pennsylvania.  The Institute states that its 32 employees

reside in or near Pennsylvania, but it does not argue why these employees are implicated in this

dispute or how litigation in Idaho would burden them.  DI 29-1 at 19.  On the other hand,

Lightcast argues that traveling from Idaho to Pennsylvania will impose a significant burden on

Lightcast and its eight anticipated witnesses, nearly all of whom reside in Idaho.  DI 24-1 at 16.

This factor favors transfer.

### v.   Convenience of the witnesses

As to the convenience of its witnesses, the Institute makes no argument.  Instead, the

Institute argues that litigating in Philadelphia would not impose an excessive burden on Lightcast

because two of Lightcast's board members are key witnesses and "reside in or around

Manhattan."  DI 29-1 at 13.  On the other hand, Lightcast argues that its potential third-party

witnesses, at least four of whom reside in Idaho, are beyond the court's subpoena power.  DI 24-

1 at 17.  This factor cuts in favor of transfer because "it is generally preferable to prosecute a

case in a location where relevant witnesses can be compelled to attend." *Lindley v. Caterpillar, Inc.*, 93 F. Supp. 2d 615, 618 (E.D. Pa. 2000).

### vi.    Location of books and records

The Institute and Lightcast maintain their books and records in Pennsylvania and Idaho, respectively.  This factor is neutral because electronically and manually stored documents can be easily transferred across state lines.  *See Synthes*, 978 F. Supp. 2d at 461.

### b.    The public interest factors favor transfer.

### i.    Enforceability of the judgment

Neither party argues that the ultimate judgment would be unenforceable in Pennsylvania or Idaho.  This factor is neutral.

### ii.    Practical considerations

Practical considerations weigh in favor of transfer, particularly where "there is already a pending action with almost identical claims and identical parties that was filed prior to this action." *Ewideh v. Homesite Ins. Co. of the Midwest*, No. 23-2590, 2024 WL 493426, at *4 (E.D. Pa. Feb. 7, 2024) (emphasis omitted).  "To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy, and money that § 1404(a) was designed to prevent." *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960).  We agree with Lightcast that litigating in Pennsylvania and Idaho simultaneously is duplicative and wasteful.  In the interests of judicial economy, this factor favors transfer.

### iii.    Court congestion

Lightcast argues that the Eastern District of Pennsylvania is far more congested than the District of Idaho, with nearly 14 times the number of civil filings and 10 times the number of

pending cases as of June 2024. DI 24-1 at 19; DI 24-4 at 1 (ECF) (Statistical Tables for the Federal Judiciary – June 2024, Table C). The Institute points to recent reports that the Eastern District of Pennsylvania had the fastest civil trial docket in the country in 2024. DI 29-1 at 20. This data, interesting as it may be, does not give real insight into the congestion challenges of either district court. For one, it reflects total numbers, but does not take account of per-judge congestion, which is the more relevant consideration here. This factor is neutral.

### iv.   Local interests

This factor is neither here nor there. Although Lightcast argues that its Idaho-based witnesses have an interest in this dispute's resolution, there is also a local interest in Pennsylvania because the claim arose there. Thus, this factor is neutral and does not weigh on our analysis.

### v.   Public policies of the fora

Neither the Institute nor Lightcast identify any public policy differences between Pennsylvania and Idaho that influence our transfer decision. Again, this factor is neutral.

### vi.   Familiarity with the applicable state law

The Institute argues that litigation in Pennsylvania is appropriate because the disputed Marks License is governed by Pennsylvania law. However, the District of Idaho is perfectly equipped to consider and apply Pennsylvania law in a straightforward contract dispute such as this one. We also agree with Lightcast that both courts are equally prepared to apply federal trademark law. This factor is neutral.

***Summing up***, the private and public interest factors tip in favor of transferring this dispute to the District of Idaho. The existence of a first-filed case in Idaho provides powerful reason to transfer, especially considering that it would be more convenient to the parties and

19

witnesses involved in this dispute.  We do not give substantial weight to the Institute's choice of forum or location of the breach when practical considerations and relative court congestion also support transfer.

Because both the first-filed rule and § 1404(a) factors weigh in favor of transfer, we decide that the District Court of Idaho is the more appropriate forum for this dispute.

## V.      CONCLUSION

For the reasons explained above, EMSI is dismissed as a party pursuant to Rule 12(b)(1) and the remaining case is transferred to the United States District Court for the District of Idaho pursuant to the first-filed rule and § 1404(a).